PHILIP MORTIMER, ESQ. v. CHARLES AND GEORGE CALDWELL.

A partnership is dissolved, and all company effects assigned to one partner; who becomes bound to pay the company debts. He becomes a bankrupt, a special act of insolvency is passed in his favor, exempting his body from imprisonment upon his assigning his property to trustees for the use of his creditors. He complies with the provision in the act, and assigns the company property. The company debts are exhibited to his trustees, and averaged among his private debts; the other partner is still liable to pay the remainder due on company debts.

ACTION on book debt. The defendants pleaded, that the book of the plaintiff, on oyer, is found to consist of articles and services done and furnished for the defendants, as co-partners and traders in company, between the years 1761 and 1766. That on the 15th day of December, 1768, the defendants, by a writing under their hands, dissolved the copartnership of the company of Charles and George Caldwell. And by the same writing, the said Charles assigned over and conveyed to said George, all the company concerns, interest and credits, for said George, to receive and convert to his own use. And George, in consideration thereof, took upon himself, covenanted and engaged, to pay all the company debts then due: And thereby, all the company interest and credits, became the property of said George, and it became his duty to pay and discharge all the company debts. That the book on which, etc., is one of said company debts, which it was the duty of said George to pay and satisfy. That said Charles being divested of all property or right to the company dues, interest and credits, and said George being

reduced by losses and misfortunes, preferred his petition to the general assembly in May, 1771, representing his losses, misfortunes, and inability to pay all said debts.

The general assembly inquired into the matter, and found that his debts, including said company debts, which it was his duty to pay, amounted to £5,788 9s. 4¼d. and that his estate and credits amounted to £3,049 9¼d., including said company interests and credits. That the general assembly passed a special act of insolvency, exempting the person of said George from imprisonment for any debt then due, upon assigning over all his property as before stated, to trustees therein mentioned, for the use of his creditors. (Which act is recited at large in the plea.)

That said George did, in pursuance and compliance with said act of assembly, make over and assign to said trustees all his estate, both real and personal, with all the estate, dues, and credits of said company of Charles and George Caldwell, to and for the use and benefit of his creditors. And that they ever have been since, at the sole disposal and direction of said creditors, one of whom was the plaintiff, who was privy to, and acquiesced in said transaction.

That in May, 1772, upon application of said trustees, the general assembly, by a special act, empowered them to sue for, and recover all the debts, credits and moneys due to said George, and the late company of Charles and George, and when recovered, to divide and distribute the same amongst his creditors. (Which act is recited at large in the plea.)

And that thereupon all the estate, interests, securities, papers, vouchers, and receipts, relating to said company debts and credits, were delivered over into the hands of said trustees to settle and adjust with the several creditors, and

said Charles and George are wholly divested of them, and have no means in their power to evince any payments that have been made; and thereupon said George Caldwell, and said company of Charles and George Caldwell, became exonerated and discharged from all suits and demands against them, for any debts due and owing from said company, until a final average should be made out by said trustees, pursuant to said act of insolvency; and then only for the residuum of said debts that should be found due after such average should be made. And that no average hath been made out by said trustees, but the same is still depending in the hands of said trustees, subject, as it ever has been, to the order and direction of said creditors, of whom the said Philip Mortimer was, and is one.

To this there was a demurrer, and joinder in demurrer.

By the COURT. The plea is insufficient. The special act of insolvency set forth in the plea, goes to the exemption of the person of George, one of the defendants, (leaving his estate liable, which he may afterwards acquire). But it extends not to Charles, the other defendant. He is not named in it. Nor is it grounded on any supposed inability of his, to pay the company debts. Nor does it operate to discharge him on the ground of the supposed hardship there would be in his remaining liable, after the person of the other joint debtor is liberated, and the company effects and papers are gone into the hands of trustees and out of his control. If he is in fact more exposed and defenseless to his creditors, since the passing the act of insolvency, than he was before, it does not follow that it has discharged him. But he ever was liable to be relied upon, solely, for all the company debts, and all

their contracts were, in their nature, joint and several. Nor is it owing to the passing of the act of insolvency, that he has not right to control the company effects; he having sold and relinquished his share in them years before, at the dissolution of the partnership; and the act provides for no other assignment than of that which is considered as George's estate. Nor need there be any difficulty about the company books and papers. Free access may be had to them, and an order of court, if necessary, might be obtained for their being brought into court when requisite in the trial of a cause.

If the trustees have paid the plaintiff any part of his debt, out of the avails of the effects assigned to them, it can be shown and applied when damages come to be assessed. A balance, it is clear, there must be due to him, even if the assignment to the trustees be considered as an actual payment to the creditors, and to the nominal amount of the credits and effects assigned. And no reason appears why judgment should not be rendered in the present action, for the ascertaining and recovering what still remains due.

DYER, J., dissenting. C. and G. Caldwell, when they entered into contract with the plaintiff, were known to be in company; and every contract they made must be considered and governed by the true legal intention of the parties, and the laws of the state then in being and force; and if altered by any *post facto* law, or private act of the legislature, will operate to destroy or render void the original contract. Bacon's Abr. tit. Statute c.; Salkeld, 198; Brewster v. Kitchel. But it cannot operate to subject the obligors, their persons or estate, in a different manner from what they were obliged at the time of the contract. On a bond, A. and B. are joint obligors; if the name or seal of one is taken off, it is destroyed as to the other.

Charles and George, and each of them, at the time of contracting with the plaintiff, knew and considered that the body and estate of each were pledged for the satisfaction, or to compel the payment of the debt: And Charles must consider, that the body of his brother George was liable to be taken and holden to compel him to turn out or produce his estate (if any) for the satisfaction of the debt, as well as his own: This also the plaintiff well knew, and was the legal security he depended upon. If the assembly, by a sovereign act, and of a private nature, have undertaken to liberate the person of George from being liable to be taken and holden to compel him to produce his estate, (if any) it materially alters the original contract and security, both as to debtors and creditors. And the creditor, by consenting thereto (without which the act could not operate to the disadvantage of Charles, the other partner) does as effectually discharge the original contract, as if by his own immediate act, he had discharged one of the joint debtors. In the present case, if judgment is rendered in favor of the plaintiff, he cannot take the body of George — George may possess large property, which can easily be kept out of the way of the creditor's execution; and his body being exempt, there is no way to compel a discovery; (For that is the only solid ground or reason of the law subjecting the body to be taken.) Now the body of George being liberated, it necessarily casts the whole upon Charles, essentially different from the original contract. It is objected, that on the original contract, the creditor, if he pleased, might collect the whole out of the estate of either, or take the body of either without the other, and compel him to produce estate to pay the whole. True it is so; but then

Mortimer v. Caldwell et al.

Charles had an equal chance with George, that George might be compelled to pay the whole, or at least the one-half: But if the act in favor of George is operative in this case, it exempts George, and necessarily casts the whole upon Charles, contrary to the legal understanding and operation of the original contract.

It is further objected, that it appears from the law authorities, that by the operation of the bankrupt laws in England, where one partner becomes a bankrupt, the other is notwithstanding subjected to all intents and purposes, as though his partner had taken no benefit thereby. To which I answer, that the statute respecting bankrupts in England, is a general subsisting law of the kingdom, antecedent to all debts or contracts which are affected by it: Therefore, when a contract is made, (a general public law existing) such contract must be considered by the contracting parties, and understood as subject to such law. This is what I contend for. The act now pleaded, exempting the body of George, is a private act, which did not exist at the time this debt was contracted, but was made long since; therefore could not be had in consideration by the parties contracting: But the laws then existing, subjected the bodies of both to be taken, and held to compel a satisfaction of the debt; one of which is since liberated by this act: The plaintiff and the other creditors, have conformed themselves thereto; which essentially alters the original contract.

Another point of some weight and consideration in the case is, that the company debts and interests were all made over to George, and with the estate of George, by act of law and the creditors, was made over to commissioners appointed by the creditors, and the plaintiff in particular: And which

Mortimer v. Caldwell et al.

commissioners are appointed and empowered to examine all debts and demands against said company, and ascertain the sums due, and to apportion out to the several creditors their several parts, as in case of insolvent estates, etc., and that the same still lies before the commissioners unfinished.   I am, therefore, of opinion, the action does not at present lie before the courts of common law to ascertain the debt of any creditor, but before the commissioners:   Neither can any certain judgment be rendered by this court in the present case, as the commissioners have not determined what is the plaintiff's proportion of the estate in their hands.

Upon the whole, it appears unjust, and not consonant to reason or equity, that on a joint or company contract of George and Charles Caldwell, a judgment should be rendered which will subject the body of Charles to be taken and imprisoned, at the pleasure of a creditor, though no estate in his hands, when at the same time George may have a plentiful estate, but his body liberated, and no means left either for Charles himself, the plaintiff or any other creditor, to compel George to discover or produce his estate for the satisfaction of the company debts, or any part thereof, but Charles alone is subjected, contrary to his original contract and undertaking.